CHRISTOPHER HAYS, State Bar No. 59480
Law Offices of Christopher Hays
One Embarcadero Center, Suite 500
San Francisco, California 94111
Telephone: (415) 398-0848
Facsimile: (415) 931-0444
Email: <hays-sf@pacbell.net>

Attorneys for Defendants
KEVIN VU and CAFE BONITA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINHDARELLA, INC. | No. C 07 04353 WHA |
| vs. | MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION |
| KEVIN VU, etc., et al., | |
| Defendants. | Hearing Date:   7 February 2008 |
| _____/ | Time:                8:00 a.m. |
| | Courtroom:       9 |

Kevin Vu ("Vu") submits the following points and authorities in opposition to the motion of Plaintiff Sinhdarella, Inc. for a preliminary injunction herein.

## Facts

Vu was born in Vietnam in 1965, came to the United States in 1978, when he was 13 years old, and became a citizen of the United States in 1986 or 1987 (Declaration of Kevin Vu in Opposition to Motion for Preliminary Injunction ("Vu Decl.") ¶¶ 1 - 3).

Vu attended college at the University of California at Santa Barbara, and graduated therefrom in 1988 with a Bachelor of Arts degree in Business Economics (Vu Decl., ¶ 4).

Vu attended Temple University School of Dentistry in Philadelphia, Pennsylvania, and graduated therefrom in 1997 with a Doctor of Dental Medicine

MEMO PTS AUTHS OPP PRELIM INJCT

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

1  degree (Vu Decl., ¶ 5), and has current dental licenses with the State of California

2  and with Vietnam (Vu Decl., ¶ 6).

3      Vu is the president and sole shareholder of Cafe Bonita, Inc., a

4  California corporation, which owns and operates the restaurant known as the

5  "Boiling Crab" located at 393 North Capitol Avenue, San Jose, California (the "San

6  Jose "Boiling Crab" Restaurant") (Vu Decl., ¶ 7).

7      Vu purchased a Mexican restaurant as an individual at that location in

8  San Jose in or about September 2003 and named it "Cafe Bonita."  Vu changed the

9  restaurant's type to Coffee Shop in or about Spring 2005 (Vu Decl., ¶ 8).

10      The San Jose "Boiling Crab" Restaurant is, and has always been,

11  owned and operated by Cafe Bonita, Inc., a California corporation of which Vu is

12  the sole shareholder and officer (Vu Decl., ¶ 9).

13      The San Jose "Boiling Crab" Restaurant had been inspired by a

14  restaurant named "Boiling Crab" which Vu had seen in Ho Chi Minh City (formerly

15  "Saigon") (the "Vietnam "Boiling Crab" Restaurant") when Vu was traveling there in

16  December 2005. (Vu Decl., ¶ 10).

17      The exterior sign of the Vietnam "Boiling Crab" Restaurant was in

18  English, and was colored red and blue (Vu Decl., ¶ 11).

19      In June 2006, Vu did a search on the United States Patent and

20  Trademark Office website for the name "Boiling Crab," and learned at that time that

21  the name was not registered.  Vu accordingly named his new seafood restaurant

22  the "Boiling Crab," and it reopened under that name on or about 20 June 2006 (Vu

23  Decl., ¶ 12).

24      At no time prior to the naming of his restaurant the "Boiling Crab" was

25  Vu aware of the restaurants of similar name owned and operated by Plaintiff

26  herein, Sinhdarella, Inc. (Vu Decl., ¶ 13).

27      When deciding on the interior decor of his "Boiling Crab" restaurant in

28  June 2006, Vu initially wanted to decorate the interior with antique photographs of

MEMO PTS AUTHS OPP PRELIM INJCT

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

1  fishing and ocean scenes similar to what Vu had seen in some seafood restaurants
2  in San Jose, Santa Cruz, and San Francisco.   Vu was unable to find a source for
3  such photographs after a search at the Santa Cruz Pier and at Fisherman's Wharf
4  in San Francisco (Vu Decl., ¶ 14), and as an alternative that still produced a visual
5  effect of a seafood theme, Vu decided to hang his own fishing pole and crab nets
6  on the wall of the restaurant, Vu already had models of red crustaceans in the
7  Mexican Restaurant, and Vu purchased seafood signs in Santa Cruz (Vu Decl., ¶
8  15).

9         Vu chose the wall color and the font for the signs himself, without any
10  reference whatsoever to Plaintiff's restaurants, which Vu had never seen and
11  about which existence Vu was totally unaware (Vu Decl., ¶ 16).

12         The configuration of the tables and chairs was not changed from Vu's
13  original setup for the Mexican Restaurant, "Cafe Bonita," in 2003 (Vu Decl., ¶ 17).

14         The Menu of Vu's "Boiling Crab" restaurant was inspired by the Menu
15  of the Vietnam "Boiling Crab" Restaurant, and was created by Vu without any
16  reference whatsoever to Plaintiff's restaurants, which Vu had never seen and
17  about which existence Vu was totally unaware.   (Vu Decl., ¶ 18).

18         The size of the Menu of the San Jose "Boiling Crab" Restaurant was
19  dictated by the size of a standard piece of 8-1/2" by 11" paper, which was printed
20  with 2 Menus and thereafter cut in half, and its color, orange, was chosen by Vu
21  from among approximately 15 colors of paper available from Office Depot without
22  any reference whatsoever to Plaintiff's restaurants, which Vu had never seen and
23  about which existence Vu was totally unaware (Vu Decl., ¶ 19).

24         In or about October 2007, at a time Vu was not represented by
25  counsel, Plaintiff's attorney, Michael De Vries, informed Vu that Plaintiff would have
26  the U.S. Marshal close his restaurant if Vu did not immediately stop using the "Boiling
27  Crab" name.  Accordingly, for a period of about three weeks, until Vu was advised
28  by his present counsel that the continuous use of the name "Boiling Crab" may be a

MEMO PTS AUTHS OPP PRELIM INJCT

1  defense to this action, Vu changed the restaurant's name to the "Boiling Crawfish"
2  (Vu Decl., ¶ 20).
3       Vu had told his suppliers that he planned to open a second restaurant
4  in order to get a better prices from them, and it was the truth.  At the time Vu made
5  the statement to his suppliers, everything regarding the second restaurant was in
6  the planning stage, and Vu wasn't sure if he could find a second investor to take
7  care of the second restaurant.  Thereafter, at which time Vu was again not
8  represented by counsel, Vu spoke by telephone to Mr. De Vries, and when Mr. De
9  Vries asked Vu  if he had a second restaurant, Vu truthfully said "No" (Vu Decl., ¶
10 21).
11      During yet another telephone conversation with Mr. De Vries when Vu
12 was again not represented by counsel, at which time Vu and De Vries were
13 discussing settlement, Vu told Mr. De Vries that even before this lawsuit he had
14 planned to live and retire in Vietnam.  In fact, last year Vu lived almost 6 months in
15 Vietnam.   Vu also told Mr. De Vries that even though he had assets, he also had
16 large debt, so that even if Plaintiff were to win this case, Vu has to pay his attorneys,
17 and Plaintiff will accordingly recover little (Vu Decl., ¶ 22).
18 **Authorities and Argument**
19      Section 33(b) of the *Lanham Act*, 15 U.S.C. § 1115(b)(5), provides a
20 defense to a good faith user who began using a registered trademark before the
21 mark purportedly infringed was filed for registration:
22      1115(b) [T]he right to use the registered mark shall be . . . subject to the
        following defenses or defects:
23
24          (5) That the mark whose use by a party is charged as an
            infringement was adopted without knowledge of the registrant's
            prior use and has been continuously used by such party or
25          those in privity with him from a date prior to [the date of filing for
            registration].
26      Vu's use of the name "Boiling Crab" began on or about 20 June 2006
27 (Vu Decl., ¶ 12); Plaintiff filed its "Boiling Crab" application for trademark registration
28

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

1    on 17 August 2006 (Complaint, Exhibit H).  Vu had no knowledge of Plaintiff's "Boiling

2    Crab" restaurants prior to the time that he opened his San Jose "Boiling Crab"

3    Restaurant (Vu Decl., ¶ 13), and in fact, Vu conducted an online trademark search

4    for the name "Boiling Crab" at the United States Patent and Trademark Office

5    website prior to the selection of the name (Vu Decl., ¶ 12),

6            Plaintiff's argument that it is a "national chain" is belied by the facts: it

7    has three restaurants in Orange County, California, and one restaurant in Houston,

8    Texas (Declaration of Dada Ngo in support of Plaintiff's motion ("Ngo Decl."), ¶ 32).

9            Plaintiff's closest restaurant (in Alhambra, California) to Defendant's in

10   San Jose, is over 340 miles away by road across the Tehachapi Mountains

11   (Appendix of Employee Declarations in support of Plaintiff's motion, Exh. A).

12   Defendants respectfully request that this Court take judicial notice of the fact that

13   restaurant patrons do not travel such a distance to eat.

14           Although "confusion" is irrelevant to a § 1115(b)(5) "Good Faith"

15   defense, Plaintiff's argument that Vu copied Plaintiff's "Boiling Crab" Mark and its

16   trade dress, which is based wholly on circumstantial evidence which is rebutted by

17   Vu's sworn testimony, is fanciful at best.

18           Granted, the "Boiling Crab" words are Identical, but the Marks are

19   radically Different (see Complaint Exhibits B and I).  Plaintiff's sign is in a block capital,

20   printed letter font, whereas Vu's sign is in an italicized, initial capital, cursive font.  On

21   Plaintiff's sign "THE BOILING" is red and "CRAB" is blue, whereas on Vu's sign "The"

22   is blue and "Boiling Crab" is red.  Plaintiff's sign has a blue crab attached to the

23   bottom of the "B" in the word "CRAB", whereas Vu's sign contains no crustacean

24   images at all.  Significantly, the exterior sign of the "Boiling Crab" restaurant which

25   Vu had seen in Vietnam, and which was the inspiration for Vu's San Jose "Boiling

26   Crab" Restaurant, was likewise colored red and blue  (Vu Decl., ¶ 11).

27           Plaintiff's and Vu's restaurant interiors are likewise markedly different

28   (Complaint Exhibits C and K).  Plaintiff's restaurant's walls are dark royal blue, have

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

MEMO PTS AUTHS OPP PRELIM INJCT

a distinctive shelf on the wall near the ceiling packed with crabbing gear, have brown wainscotting, and the restaurants have tables that are bare white formica, and chairs that are black. On the contrary, Vu's restaurant's walls are light blue, have no shelf, have blue wainscotting, and the restaurant has tables that are covered with orange tablecloths, and chairs are light brown.

Likewise, Plaintiff's and Vu's Menus are markedly different (Complaint Exhibits D and J). Plaintiff's is divided into three categories: Menu, Extras!, and Thirsty?, and has 4 main courses listed with pictures of each crustacean offered; Vu's Menu is divided into only two categories: Menu and Drink, has 5 main courses listed in a different order than Plaintiff's, and has no pictures. Vu's Menu is as much or more like the Menu from the restaurant in Vietnam which Vu swears inspired his San Jose "Boiling Crab" Restaurant (Vu Decl, Exh. B).

The table and chair configuration of Vu's restaurant, rather than having been copied from Plaintiff's restaurant, is the same as it was when Vu's restaurant was a Mexican Restaurant in 2003, long before Vu had conceived of a seafood restaurant (Vu Decl, ¶ 17).

The only competent, non-Hearsay evidence of actual "confusion" Is a single incident in August 2006, when a friend of Plaintiff's President and four of her friends visited Vu's restaurant (Appendix of Customer Declarations in support of motion), and a single email received by Plaintiff''s President in January 2007 (Ngo Decl., ¶ 14). Plaintiff's Employee Declarations must be disregarded as incompetent Hearsay: they are offered to prove the truth of the statements purportedly made to Plaintiff's employees by customers regarding customer "confusion."

A preliminary injunction should *never* be granted based upon such scant evidence.

"[T]he granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it . . . ." *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1181 (7th Cir. 1989).

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

1   As has been stated by the person who is probably the foremost

2   scholar on Trademark law, J. Thomas McCarthy,

3   There are five basic criteria which must guide the trial judge in deciding
    whether to exercise equitable discretion by granting a preliminary injunction.
4   However, the application of these criteria is not a computerized, checklist
    kind of analysis, for a strong showing on one point may make up for a
5   weakness in a showing on another point. . . . .    The five basic criteria are:

6      1.    Can plaintiff show a probability of success at the ultimate trial on
             the merits?
7      2.    Can plaintiff show that it will suffer "irreparable injury" pending a
             full trial on the merits?
8      3.    Will a preliminary injunction preserve the "status quo" which
             preceded the dispute?
9      4.    Do the hardships balance in favor of Plaintiff?
       5.    Is the preliminary injunction necessary to protect third parties?

10
11  While each circuit court of appeals has developed its own reformulation, all
    courts will consider and balance these five elements, either explicitly or
12  implicitly.  5 *McCarthy on Trademarks and Unfair Competition*, § 30.31 (2003)
    (footnotes omitted).

13   Given Vu's § 1115(b)(5) "Good Faith" defense and the scant testimonial

14  and documentary evidence of "confusion," there has been no showing of a

15  probability of success.

16   There has been no showing whatsoever that Plaintiff's three Orange

17  County and one Houston restaurant will suffer irreparable injury if Vu continues

18  using the "Boiling Crab" name at his far distant location in San Jose.

19   Plaintiff will suffer little or no hardship to its Orange County and Texas

20  restaurants if Vu continues to lawfully use the "Boiling Crab" name for his San Jose

21  restaurant, but Vu will lose the goodwill he has built over a year and a half of

22  operating his restaurant under this name.

23   The preliminary injunction is *not* necessary to protect third parties as

24  the "buying public," who are the "third parties" in trademark infringement cases

25  (*McCarthy, op. cit.*, § 30:52, citing *Standard & Poor'S Corp. v. Commodity*

26  *Exchange*, 683 F.2d 704 (2nd Cir. 1982)), given the large geographical separation

27  between Plaintiff's and Vu's restaurants.

28   Indeed, the *only* criterion which Plaintiff appears to have satisfied – that

MEMO PTS AUTHS OPP PRELIM INJCT

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

1   the "status quo" which preceded the dispute will be preserved, *i.e.*, that the

2   injunction will be effective – is certainly not in itself reason to grant Plaintiff this

3   extraordinary remedy.

4           Furthermore, Plaintiff must be estopped from denying Vu's

5   "continuous use" for purposes of Vu's § 1115(b)(5) "Good Faith" defense, since the

6   brief period during which the name "Boiling Crab" was not used was occasioned by

7   threats made by Plaintiff's counsel that Plaintiff would have the U.S. Marshal close

8   Defendant's restaurant if Vu did not immediately stop using "The Boiling Crab"

9   name, and Vu was not represented by counsel when this threat was made (Vu

10  Decl, ¶ 20).

11          Also, Plaintiff's efforts regarding leasing a restaurant location in San

12  Jose is likewise Irrelevant to a § 1115(b)(5) "Good Faith" defense.

13          Moreover, the "Boiling Crab" trademark can in no way be deemed to

14  include "Boiling Crawfish."  Had Plaintiff wanted to preclude others from using this

15  name, it should have filed for protection of it.  Indeed, under Plaintiff's reasoning, *all*

16  crustacean names used after the word "Boiling" would be precluded by Plaintiff's

17  Trademark.

18          Plaintiff's purported right to an injunction under state law should not be

19  considered by the Court, as no authority whatsoever for this proposition has been

20  cited by Plaintiff.

21          Finally, Plaintiff's "Boiling Crab" trademark should be deemed invalid

22  because it is merely descriptive, and no secondary meaning has been established

23  for it.

24  Dated: 17 January 2008.                    Respectfully Submitted
                                            Law Offices of Christopher Hays
25

26

27  By_____
                                            Christopher Hays
28          Attorneys for Defendants KEVIN VU and CAFE BONITA, INC.

LAW OFFICES OF
CHRISTOPHER HAYS
ONE EMBARCADERO CENTER, SUITE 500
SAN FRANCISCO, CALIFORNIA 94111

MEMO PTS AUTHS OPP PRELIM INJCT

PROOF OF SERVICE

STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

I am employed by Law Offices Of Christopher Hays in the City and County of San Francisco, State of California. I am over the age of 18 and not a party to the within action; my business address is One Embarcadero Center, Suite 500, San Francisco, California 94111.

On 17 January 2008 I served the foregoing document(s) described as MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; DECLARATION OF KEVIN VU; DECLARATION OF CHRISTOPHER HAYS on the interested parties in this action as stated on the attached service list as follows:

X     By placing true copies thereof enclosed in sealed envelope(s) addressed as stated on the attached service list
☐     BY PERSONAL SERVICE
      I delivered such envelope(s) by hand to the offices of the addressee(s).
X     BY MAIL
      I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice such envelope(s) would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.
☐     BY OVERNIGHT MAIL: I am readily familiar with the firm's practice of collection and processing correspondence for mailing via _____. Under that practice such envelope(s) would be deposited at an authorized _____ location on that same day with delivery fees fully provided for at San Francisco, California, in the ordinary course of business.
X     BY E-MAIL:
      On 17 January 2008, at approximately 4:45 pm, I served the above stated document(s) by e-mail directed to the parties as indicated of the attached service list.

Executed on 17 January 2008 at San Francisco, California.

X     (FEDERAL) I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

_____
Christopher Hays

ATTACHED SERVICE LIST

Michael W. De Vries, Esq.
Andrew J. Fossum, Esq.
Latham & Watkins
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626

<mike.devries@lw.com>
<Andrew.Fossum@lw.com>