LATHAM & WATKINS LLP
  Michael W. De Vries (SBN 211001)
    *mike.devries@lw.com*
  Andrew Fossum (SBN 250373)
    *andrew.fossum@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

Attorneys for Plaintiff
SINHDARELLA, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINHDARELLA, INC., a California corporation,<br><br>          Plaintiff,<br><br>    v.<br><br>KEVIN VU, an individual, d/b/a/ THE BOILING CRAB; CAFE BONITA, INC., a California corporation; and DOES 2 through 10,<br><br>          Defendants. | CASE NO. C 07-04353 WHA<br><br>Honorable William H. Alsup<br><br>**PLAINTIFF SINHDARELLA, INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Supplemental Declarations of Dada Ngo and Michael W. De Vries filed concurrently herewith]<br><br>Date:      February 7, 2008<br>Time:     8:00 a.m.<br>Location:  Courtroom 9 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   SINHDARELLA IS CERTAIN TO SUCCEED ON THE MERITS OF
      ITS TRADEMARK INFRINGEMENT CLAIMS AGAINST
      DEFENDANT ...................................................................................................... 1

      A.    Defendant's Use of "The Boiling Crab" Is Likely to Cause and Has
            Caused Confusion with Sinhdarella's THE BOILING CRAB
            Trademark ................................................................................................. 2

      B.    Defendant Has No Valid Defense Under 15 U.S.C. § 1115(b)(5) to
            Sinhdarella's Trademark Infringement Claims ...................................... 10

            1.    Defendant Has Asserted No Defense to Sinhdarella's
                  Claims For Infringement Of Its Common Law Rights In
                  THE BOILING CRAB. ................................................................. 10

            2.    Defendant's Asserted 15 U.S.C. § 1115(b)(5) Defense Also
                  Fails Because Defendant Knew of and Copied Sinhdarella. ........ 11

      C.    Sinhdarella Possesses A Valid Trademark .......................................... 13

      D.    Defendant's Use of the Name "The Boiling Crawfish" Is Likewise
            Confusingly Similar and Is Prohibited Under the Safe Distance
            Rule ....................................................................................................... 14

III.  DEFENDANT CONCEDES THAT SINHDARELLA WILL BE
      IRREPARABLY HARMED IF A PRELIMINARY INJUNCTION IS
      NOT GRANTED .............................................................................................. 15

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Adray v. Adry-Mart, Inc.*,
    76 F.3d 984 (9th Cir. 1995) ................................................................................ 14

*AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ........................................................................... 8, 9

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.*,
    693 F.2d 1155 (5th Cir. 1982) ............................................................................. 5

*Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036
    (9th Cir. 1999) .................................................................................... 3, 5, 10

*Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*,
    659 F.2d 695 (5th Cir. 1981) ............................................................................. 14

*Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*,
    383 F.3d 110 (3d Cir. 2004) ................................................................................ 5

*Committee for Idaho's High Desert v. Yost*,
    92 F.3d 814 (9th Cir. 1996) ................................................................................ 14

*Conversive, Inc. v. Conversagent, Inc.*,
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ............................................................... 4

*Entrepreneur Media v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) .......................................................................... 4, 8

*First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*,
    356 F. Supp. 2d 1048 (N.D. Cal. 2005) ............................................................. 15

*Flynt Distributing Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ............................................................................. 5

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837, 845 (9th Cir. 1987) ................................................................. 4, 5, 11

*Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*,
    111 F.3d 993 (2d Cir. 1997) ................................................................................ 5

*Hanover Star Milling Co. v. Metcalf*,
    240 U.S. 403 (1916) ......................................................................................... 11

*Heideman v. S. Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ........................................................................... 5

*In re Dixie Restaurants, Inc.*, 105 F.3d 1405 (Fed. Cir. 1997) ...................................... 3

*Jada Toys, Inc. v. Mattel, Inc.*,
    496 F.3d 974 (9th Cir. 2007) ............................................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

ii

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1

*Jordache Enters. v. Hogg Wyld, Ltd.*,
   828 F.2d 1482 (10th Cir. 1987) ............................................................................................ 5

2

*Kendall-Jackson Winery v. E. & J. Gallo Winery*,
3      150 F.3d 1042 (9th Cir. 1998) ............................................................................................ 13

4      *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*,
   799 F.2d 867 (2d Cir. 1986)................................................................................................. 5

5

*Lyons Partnership, L.P. v. Morris Costumes, Inc.*,
6      243 F.3d 789 (4th Cir. 2001) ............................................................................................... 5

7      *Nautilus Group, Inc. v. Icon Health and Fitness, Inc.*, 372 F.3d 1330 (9th Cir.
   2004) ...................................................................................................................................... 9

8

*Official Airline Guides v. Goss*,
9      6 F.3d 1385 (9th Cir. 1993) ................................................................................................. 9

10     *Sierra v. Phoenix*,
   739 F.2d 1415 (9th Cir. 1984) ............................................................................................ 14

11

*Thompson v. Pfizer, Inc.*,
12     753 F.2d 208 (2d Cir. 1985)................................................................................................ 14

13     *Tie Tech, Inc. v. Kinedyne Corp.*,
   296 F.3d 778 (9th Cir. 2002) .............................................................................................. 13

14

15                                        **STATUTES**

16     15 U.S.C. § 1114(1) ................................................................................................................. 2

17     15 U.S.C. § 1115(b) ............................................................................................................... 10

18     15 U.S.C. § 1115(b)(5) .................................................................................................... passim

19     15 U.S.C. § 1125(a) ........................................................................................................... 2, 10

20     Fed. R. Evid. 807 ..................................................................................................................... 5

21

22                                   **OTHER AUTHORITIES**

23     California Business & Professions Code §§ 17200 ........................................................... 2, 10

24

25

26

27

28

## I.    INTRODUCTION

Defendant would have this Court believe that the startling number of precise similarities between the name, menu, look-and-feel, and offerings of Defendant Kevin Vu's ("Defendant") "The Boiling Crab" restaurant and the name, menu, look-and-feel, and offerings of Sinhdarella, Inc.'s ("Sinhdarella") earlier opened THE BOILING CRAB restaurants are the product of sheer coincidence.  That claim is, quite simply, not credible: the evidence conclusively establishes that Defendant both knew about and wholesale copied Defendant's THE BOILING CRAB restaurants, from the name right down to the precise language, color, shape, and size of Sinhdarella's menu.  Whether or not Defendant knew about or copied Sinhdarella's restaurants, however, Sinhdarella is certain to prevail on the merits of its trademark infringement claims. Every factor to be considered weighs in favor of finding that Defendant's use of Sinhdarella's THE BOILING CRAB trademark is likely to cause confusion.  Furthermore, Defendant's alleged defense under 15 U.S.C. § 1115(b)(5) cannot save Defendant from liability for his infringement both because (i) that defense does not apply to Sinhdarella's common law trademark infringement claims, and (ii) Defendant obviously knew about and copied Sinhdarella's restaurants prior to opening his infringing "The Boiling Crab" restaurant.  Further, Defendant's Opposition actually admits that Sinhdarella will not be able to recover monetary damages from Defendant for the injury Defendant's infringement is causing Sinhdarella, thereby confirming that Sinhdarella – and its husband-and-wife, middle class sole owners – will suffer irreparable harm if Defendant is not preliminarily enjoined from continuing his infringement during the pendency of this action.  Accordingly, Sinhdarella respectfully requests that the Court protect Sinhdarella from this irreparable harm by granting its motion for preliminary injunction.

## II.    SINHDARELLA IS CERTAIN TO SUCCEED ON THE MERITS OF ITS TRADEMARK INFRINGEMENT CLAIMS AGAINST DEFENDANT

Defendant argues that "there has been no showing of a probability of success." (Opposition ("Opp.") at 7.)  In support of that assertion, the four-and-a-half page "Authorities and Argument" section of Defendant's Opposition jumps around in confusing fashion between different concepts, fails to meaningfully address (or even mention) the eight factors used by

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

1

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1  courts in the Ninth Circuit to determine whether there is a likelihood of confusion,

2  mischaracterizes the multitude of declarations filed in support of Sinhdarella's preliminary

3  injunction motion as "scant evidence," and frequently makes statements that are irrelevant to the

4  analysis, not credible, or unsupported by any argument or precedent.  Nevertheless, Sinhdarella

5  endeavors below to draw all reasonable inferences about what Defendant may be trying to argue

6  and responds to Defendant's arguments, so construed, in categorical fashion in order to

7  demonstrate that Sinhdarella is certain to prevail on the merits of its four trademark infringement

8  claims against Defendant: (1) for infringement of Sinhdarella's federal registration under 15

9  U.S.C. § 1114(1); (2) for infringement of Sinhdarella's common law rights in its THE BOILING

10 CRAB trademark under 15 U.S.C. § 1125(a); (3) for infringement of Sinhdarella's common law

11 rights in its THE BOILING CRAB trademark under California Business & Professions Code §§

12 17200 *et seq.*; and (4) for infringement of Sinhdarella's common law rights under California

13 common law.[1]

14      A.      **Defendant's Use of "The Boiling Crab" Is Likely to Cause and Has Caused Confusion with Sinhdarella's THE BOILING CRAB Trademark**

15

16      Sinhdarella is likely to succeed on the merits of all four of its trademark infringement

17 claims so long as it will likely be able to show that Defendant's use of the name "The Boiling

18 Crab" is likely to cause confusion.  *Goto.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th

19 Cir. 2000); *Jada Toys, Inc. v. Mattel, Inc.*, 496 F.3d 974, 978 (9th Cir. 2007) (state law

20 trademark infringement claims established if "likelihood of confusion" is established).  Although

21 expressly addressed nowhere in Defendant's Opposition, the Ninth Circuit employs an eight-

22 factor test to determine whether there is a likelihood of confusion in trademark infringement

23

---

24 [1]   While Sinhdarella is equally confident that it will prevail on the merits of its trade dress
    infringement claims against Defendant, in the interest of only seeking from the Court what is
25   absolutely essential be resolved during the pendency of this action, Sinhdarella's motion for
    preliminary injunction is based only on Sinhdarella's aforementioned trademark infringement
26   claims and seeks an injunction prohibiting Defendant only from continuing to use
    Sinhdarella's THE BOILING CRAB trademark (or any confusingly similar trademark)
27   during the pendency of this action.  Defendant's apparent copying of Sinhdarella's distinctive
    trade dress is further evidence in support of Sinhdarella's trademark infringement claims,
28   however, as explained in Sinhdarella's Opening Brief at 15.

1    cases.  *Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1054 (9th

2    Cir. 1999).  To the extent these factors are addressed at all in Defendant's Opposition, they are

3    addressed incompletely and even then only indirectly.  (*See generally* Opp.)  Perhaps most

4    critically, Defendant does not attempt to refute the binding Ninth Circuit authority cited by

5    Sinhdarella holding that "likelihood of confusion would follow as a matter of course" if identical

6    marks are used in connection with identical products or services.  *Brookfield*, 174 F.3d at 1056.

7    Under this authority, Defendant's concession that the name of his "The Boiling Crab" restaurant

8    is identical to Sinhdarella's THE BOILING CRAB trademark  (Opp. at 5) and failure to dispute

9    that his restaurant offers identical goods and services alone establish a likelihood of confusion.

10    *Brookfield*, 174 F.3d at 1056.  In any event, *every* factor to be considered weighs in favor of

11    finding a likelihood of confusion here:

12          **Similarity of the Marks.**  As mentioned, Defendant concedes that the name of his

13    restaurant is identical to Sinhdarella's trademark.  (Opp. at 5 ("the 'Boiling Crab' words are

14    identical".)  Hence, there is no question that this factor weighs in favor of finding a likelihood of

15    confusion.  Nevertheless, Defendant argues that "the Marks are radically Different."  (*Id.*)

16    Defendant's effort to argue that the names of two restaurants with *precisely the same name* are

17    "radically Different" is unpersuasive.  The name of Defendant's restaurant is indistinguishable

18    from Sinhdarella's trademark as that name appears to consumers on Defendant's menu, in phone

19    listings, and on the Internet.  Moreover, the name of Defendant's restaurant is indistinguishable

20    from the name of Sinhdarella's restaurant when referred to orally, which is particularly relevant

21    here because "restaurants are often recommended by word of mouth and referred to orally, [so] it

22    is the word portion of [a] mark which is more likely to be impressed on the consumer's

23    memory."  *In re Dixie Restaurants, Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997).  Defendant's

24    focus on minor alleged differences between the font appearing in only one place his name

25    appears – the exterior sign of his restaurant – and the font used for Sinhdarella's exterior sign

26    does not lessen the similarity.  Defendant admits that the sign on his restaurant employs precisely

27    the same colors as used on the exterior signs of Sinhdarella's THE BOILING CRAB restaurants.

28    (Opp. at 5 ("[o]n Plaintiff's sign 'THE BOILING' is red and 'CRAB' is blue, whereas on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

3

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1   [Defendant's] sign 'The' is blue and 'Boiling Crab' is red").)  Defendant fails to explain how this

2   exceedingly minor difference could serve to lessen confusion even in the single place that it

3   appears where the name of Defendant's restaurant is *exactly the same* as Sinhdarella's

4   restaurants.  Moreover, Defendant does not even attempt to address the likelihood of confusion

5   caused by his use of a name that is identical in every respect to Sinhdarella's trademark every

6   other place in which it appears, such as on menus, on phone books, and on the Internet.

7   Accordingly, this factor weighs heavily in favor of finding a likelihood of confusion.

8          **Relatedness of Goods or Services.**  Defendant does not dispute that his restaurant offers

9   precisely the same food (crab, crawfish, oysters (raw), and shrimp) as Sinhdarella's THE

10  BOILING CRAB restaurants.  Hence, this factor also weighs heavily in favor of finding a

11  likelihood of confusion.  *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002).

12         **Evidence of Actual Confusion.**   The law is clear that "[e]vidence of actual confusion is

13  strong evidence that future confusion is likely."  *Entrepreneur*, 279 F.3d at 1150.  Critically,

14  Defendant concedes that Sinhdarella has produced "competent, non-Hearsay evidence of actual

15  'confusion.'"  (Opp. at 6.)  Specifically, Defendant concedes that Sinhdarella has produced

16  admissible evidence of at least two incidents involving at least six different people who were

17  actually confused by Defendant's use of precisely the same name as Sinhdarella's restaurants.

18  (*Id.* at 6.)  In light of Defendant's concession, there is no question that this factor also weighs

19  heavily in favor of finding a likelihood of confusion.  *Fuddruckers, Inc. v. Doc's B.R. Others,*

20  *Inc.*, 826 F.2d 837, 845 (9th Cir. 1987).

21         While conceding that Sinhdarella has produced competent, admissible evidence of actual

22  confusion, Defendant attempts to dismiss the extensive additional evidence of actual confusion

23  submitted by Sinhdarella in the form of employee declarations, claiming that they are

24  "incompetent" hearsay.  (Opp. at 6.)  Defendant fails to cite any authority in support of his

25  argument, which is at odds with substantial authority holding that such evidence of actual

26  confusion is admissible.  *See, e.g., Conversive, Inc. v. Conversagent, Inc.*, 433 F. Supp. 2d 1079,

27  1091 (C.D. Cal. 2006); *Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 1003-

28  04 (2d Cir. 1997); *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d

1   110, 133 (3d Cir. 2004); *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804

2   (4th Cir. 2001); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1160 n.10 (5th

3   Cir. 1982); *Jordache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987).[2]  Hence,

4   *all* of the substantial evidence of actual confusion produced by Sinhdarella – five customer

5   declarations and fourteen employee declaration detailing at least dozens of separate incidents of

6   consumers confused by Defendant's use of Sinhdarella's trademark – is admissible to

7   demonstrate actual confusion.  Regardless, the evidence of actual confusion produced by

8   Sinhdarella that Defendant concedes is competent and admissible alone provides "persuasive

9   proof" of likelihood of confusion, *Fuddruckers*, 826 F.2d at 845, particularly since Sinhdarella is

10  not even required to present evidence of actual confusion in order to establish a likelihood of

11  confusion, *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)

12  ("[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham

13  Act, since actual confusion is very difficult to prove and the Act requires only a *likelihood* of

14  confusion as to source.") (emphasis added).  Indeed, the fact that Sinhdarella was able to produce

15  this volume of actual confusion evidence prior to obtaining significant discovery serves to

16  reinforce the common sense conclusion that confusion follows as a matter of course where, as

17  here, identical marks are used on identical goods or services.  *Brookfield*, 174 F.3d at 1056.

18       **Defendant's Intent.**  Defendant's sworn testimony that he "had no knowledge of

19  Plaintiff's '[The] Boiling Crab' restaurants prior to the time that he opened his San Jose 'Boiling

20  Crab' Restaurant" (Opp. at 5) is not credible.  There are a vast number of precise similarities

21  between Defendant's "The Boiling Crab" restaurant – which Defendant concedes was opened in

22  2006 (*id.* at 4), years after Sinhdarella began using the THE BOILING CRAB trademark in 2004

23  and obtained nationwide media attention in 2005 – and Sinhdarella's THE BOILING CRAB

24

---

25  [2]   Also, the consistency among the employee declarations and the other evidence in the record
     demonstrates that they exhibit the requisite "guarantees of trustworthiness" and should
26   therefore be admissible under the residual exception to the hearsay rule.  Fed. R. Evid. 807.
     Regardless, a district court may consider inadmissible evidence on a motion for a preliminary
27   injunction.  *Flynt Distributing Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984); *see also*
     *Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003).

28

1  restaurants, including Defendant's: use of precisely the same name; use of a menu that was

2  obviously copied from Sinhdarella's, right down to the color and size of the menu, use of an

3  exclamation point after the words "Open 7 Days A Week!" at the bottom of the menu above

4  precisely the same hours of operation, and other precise similarities such as describing the

5  entrees in precisely the same way (*e.g.*, "Oysters (raw)"), as shown more fully in Exhibit A

6  attached hereto; use of obviously similar interior décor[3]; and sale of precisely the same entrees

7  (crab, oysters (raw), crawfish, and shrimp), most of the same side dishes (corn and sausage), and

8  virtually the same drinks as those sold by Sinhdarella.  It is essentially impossible as a matter of

9  probability and statistics that all of these precise similarities between Defendant's "The Boiling

10 Crab" restaurant and Sinhdarella's THE BOILING CRAB restaurants are a result of coincidence.

11 The only rational conclusion is that Defendant knew about and intentionally copied the name,

12 menu, and many other aspects of Sinhdarella's restaurants, and Defendant's claim that he did not

13 know about Sinhdarella's restaurants or reference Sinhdarella's menu before choosing his name

14 and creating his menu is about as credible as his claim in a sworn discovery response that he was

15 not aware of Sinhdarella's restaurants until "after he was served with the Summons and

16 Complaint in this action" (Supplemental Declaration of Michael W. De Vries ("De Vries Supp.

17 Dec."), Ex. B at Response 3) despite Sinhdarella having sent four letters to Defendant's

18 restaurant before filing this lawsuit, one of which was hand delivered by a messenger to

19 Defendant's restaurant.  (Declaration of Dada Ngo ("Ngo Dec."), Ex. J; Declaration of Michael

20 W. De Vries ("De Vries Dec."), Ex. C-E.)

21     In an attempt to avoid the undeniable precise similarities between his restaurant and

22 menu and Sinhdarella's restaurants and menu, Defendant claims he actually copied the name

23 "The Boiling Crab" from a restaurant he saw in Vietnam in December 2005 (Opp. at 2) and that

24 he copied his menu and sign from the Vietnam restaurant's menu and sign (*id.* at 6).  A

---

[3]   While Defendant argues that his restaurant interior is not exactly the same as the interior of
Sinhdarella's restaurants (*e.g.*, Defendant argues the walls are a different shade of blue,
Defendant does not put his fishing gear on a "distinctive" shelf, and the chairs are brown
instead of black (Opp. at 5-6)), even if Defendant's imitation of Sinhdarella's interior décor
is less than perfect (like his imitation of Sinhdarella's food), it is still obviously an imitation.

1    comparison of the menus from the various restaurants demonstrates that this claim is not

2    credible.[4]  As explained above and shown in Exhibit A attached hereto, there are numerous

3    precise similarities between Defendant's menu and Sinhdarella's menu that simply could not be

4    a result of chance, yet critically, neither of the menus from the Vietnam restaurant that Defendant

5    claims "inspired" his menu contains elements that explain these precise similarities between

6    Defendant's menu and the menu used at Sinhdarella's THE BOILING CRAB restaurants.  (See

7    Vu Dec., Ex. B & De Vries Supp. Dec., Ex. E.)  Accordingly, the menus from the Vietnam

8    restaurant do not explain the precise similarities between Defendant's menu and Sinhdarella's

9    menu.  Furthermore, Defendant's claim that his "Menu is as much or more like the Menu from

10   the restaurant in Vietnam" than it is like Sinhdarella's menu (Opp. at 6) is not accurate, as

11   Defendant's menu is far more like Sinhdarella's menu than it is like the Vietnam restaurant

12   menu: *e.g.*, many food items on the Vietnam restaurant menu do not appear on Defendant's

13   menu; the Vietnam restaurant menu is a different size, color, and shape than Defendant's menu;

14   and the Vietnam menu lacks many of the precise phrases (such as "Open 7 Days A Week!" with

15   an exclamation point, "oysters (raw)," and "$.50/ea") that appear on both Defendant's menu and

16   Sinhdarella's menu.  Moreover, any similarity between the food offerings on Defendant's menu

17   and the food offerings on the Vietnam restaurant's menus is attributable to the fact that, like

18   Defendant, Sinhdarella believes the Vietnam restaurant (which on information and belief was

19   opened well after Sinhdarella opened its first THE BOILING CRAB restaurant) copied

20   Sinhdarella's restaurants.  (Supplemental Declaration of Dada Ngo ("Ngo Supp. Dec.") at ¶ 2.)

21

22   _____

23   [4]    In addition, there are serious concerns with the authentication and relevance of the menu
     attached to Defendant's declaration as Exhibit B.  Defendant claims that it is a copy "of a
24   Menu from the Vietnam 'Boiling Crab' Restaurant" but tellingly does not claim that it is *the*
     menu that allegedly "inspired" his menu.  (Declaration of Kevin Vu ("Vu Dec.") at ¶ 18.)
25   Moreover, the menu attached to Defendant's declaration bears a fax stamp from a travel
     agency and a date of November 27, 2007, long after Defendant's menu was "created."  (Vu
26   Dec., Ex. B.)  Finally, Defendant opted not to attach a markedly different menu from
     apparently the same Vietnam restaurant which was produced by Defendant to Sinhdarella in
27   discovery, which does not bear any resemblance to Defendant's menu.  (De Vries Supp.
     Dec., Ex. E.)  Even that menu appears to have been printed on October 17, 2007, months
28   after this suit had been filed, and long after Defendant's menu was "created."  (*Id.*)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

7

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1   Even assuming Defendant's claim that he intentionally copied a different restaurant were

2 true, this factor would still weigh heavily in favor of finding a likelihood of confusion. "When

3 the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume

4 that the defendant can accomplish his purpose: that is, that the public will be deceived."

5 *Entrepreneur*, 279 F.3d at 1148. The rationale behind the intent factor is not punishing a

6 defendant for bad intent; it is that one who intentionally copies another with the purpose of

7 taking advantage of their reputation will only go to such effort if success is likely. *Id*. Here,

8 Defendant claims that he copied the name of a restaurant in Vietnam; while Sinhdarella has

9 demonstrated that claim not to be credible, Defendant has conceded at least copying a restaurant

10 in Vietnam that itself apparently copied Sinhdarella's restaurants: The menu of the Vietnam

11 restaurant, which Sinhdarella believes was opened years after Sinhdarella opened its first THE

12 BOILING CRAB restaurant, includes virtually an exact copy of the stylized version of

13 Sinhdarella's THE BOILING CRAB trademark appearing on the exterior sign of Sinhdarella's

14 restaurants, which was designed by Sinhdarella in 2003 without reference to any other designs.

15 (*Compare* De Vries Supp. Dec., Ex. E, *with* Ngo. Dec., Ex. B; *see also* Ngo Supp. Dec. at ¶ 1.)

16 Hence, Defendant's claim that he copied the restaurant in Vietnam, while not credible, is at least

17 a claim that, by extension, he copied Sinhdarella's trademark. Hence, even if the Court accepts

18 Defendant's incredible story, this factor still weighs in favor of finding a likelihood of confusion.

19   **Strength of the Mark.** Sinhdarella is entitled to a presumption that its mark is strong by

20 virtue of its federal registration. 15 U.S.C. § 1115(a). In addition, Sinhdarella has produced

21 uncontroverted evidence of the strength of its mark, which Defendant has not attempted to refute.

22 Hence, this factor also weighs in favor of finding a likelihood of confusion.

23   **Degree of Care Likely to be Exercised by Purchasers.** Defendant does not even

24 incidentally address this factor in his Opposition and thereby concedes that consumers are not

25 likely to exercise a high degree of care when purchasing the relatively inexpensive restaurant

26 goods and services at issue here. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 353 (9th Cir.

27 1979). Hence, this factor also weighs in favor of finding a likelihood of confusion.

28

**Marketing Channels.**  Defendant does not dispute the existence of convergent marketing channels, such as Yelp.com.  Accordingly, this factor also weighs in favor of finding a likelihood of confusion.  *Sleekcraft*, 599 F.2d at 353.

**Likelihood of Expansion.**  Although Defendant does not directly address this factor, he claims that Sinhdarella's closest location is 340 miles away from Defendant's restaurant and asks the Court to "take judicial notice of the fact that restaurant patrons do not travel such a distance to eat."  (Opp. at 5.)  While it is not clear how (if at all) Defendant believes this statement fits into the likelihood of confusion analysis, if Defendant attempts to argue that his restaurant does not compete with Sinhdarella's restaurants, Defendant's unsubstantiated assertion that his restaurant does not share customers with Sinhdarella's restaurants is directly contradicted by the evidence submitted by Sinhdarella of consumers familiar with Sinhdarella's restaurants who ate at Defendant's restaurant thinking it was affiliated with Sinhdarella.  (App. of Customer Declarations ("Cust. Decs.").)  Defendant's assertion is further contradicted by the extensive evidence of restaurant patrons who have exhibited confusion – despite the relatively short distance between Los Angeles and Orange Counties and San Jose, all of which are located within a discrete coastal "band" of California between San Diego and San Francisco – about whether Defendant's restaurant and Sinhdarella's THE BOILING CRAB restaurants are affiliated.  (App. of Employee Declarations ("Emp. Decs.").)  This evidence proves that the relatively short distance between Defendant's restaurant and Sinhdarella's restaurants in Los Angeles and Orange counties simply is not sufficient to mitigate the confusion that Defendant has caused and will continue to cause.  In any event, Defendant ignores that "[a] strong likelihood that either party may expand his business to compete with the other favors a finding of infringement."  *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993).   Defendant does not dispute the evidence submitted by Sinhdarella establishing that it is actively expanding operations including by working to open a restaurant in San Jose, California.  Hence, this factor also weighs heavily in favor of finding a likelihood of confusion.

**Summary.**  Since every factor to be considered weighs in favor of finding a likelihood of confusion, Sinhdarella will prevail on the merits of its trademark infringement claims.

**B.**  **Defendant Has No Valid Defense Under 15 U.S.C. § 1115(b)(5) to Sinhdarella's Trademark Infringement Claims**

Defendant argues that, even if his use of Sinhdarella's THE BOILING CRAB trademark is likely to cause confusion among consumers, he nevertheless has a defense to Sinhdarella's trademark infringement claims under 15 U.S.C. § 1115(b)(5) because he is "a good faith user who began using [Sinhdarella's] registered trademark [THE BOILING CRAB] before" Sinhdarella applied for registration. (Opp. at 4-5.) As described below, this alleged "defense" provides no basis for denying Sinhdarella's motion for preliminary injunction.

**1.**  **Defendant Has Asserted No Defense to Sinhdarella's Claims For Infringement Of Its Common Law Rights In THE BOILING CRAB.**

Trademark rights are based on use, and priority is established based on the first date of use in commerce, not based on the date of any registration. *Brookfield*, 174 F.3d at 1047. Defendant does not dispute that Sinhdarella began using its THE BOILING CRAB trademark in commerce at least as early as 2004, several years *before* Defendant claims to have begun using the same mark, in June 2006. (Opp. at 4.) Hence, it is undisputed that Sinhdarella established common law trademark rights in the mark THE BOILING CRAB, long before Sinhdarella filed for registration and Defendant opened his restaurant under the name "The Boiling Crab." By its terms, 15 U.S.C. § 1115(b)(5) applies only to claims for infringement of "*registered*" marks, not to common law trademark infringement claims. 15 U.S.C. § 1115(b) ("the right to use the registered mark … shall be subject to the following defenses"). Hence, 15 U.S.C. § 1115(b)(5) provides no defense to Sinhdarella's claims for infringement of its common law trademark rights in THE BOILING CRAB trademark under 15 U.S.C. § 1125(a) (Claim 2 of the Complaint), California Business & Professions Code § 17200 (Claim 3), and California common law (Claim 4), and Defendant has invoked no other defense to these claims.

Even if 15 U.S.C. § 1115(b)(5) applied to Sinhdarella's common law trademark infringement claims (which it does not), Defendant does not claim to have begun using the name "The Boiling Crab" until 2006 (Opp. at 4) – several years after Sinhdarella established common law rights in its THE BOILING CRAB trademark, in 2004. Thus, Defendant cannot show continuous use of the name "The Boiling Crab" from a date prior to the date Sinhdarella obtained

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

10

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1   common law rights in 2004, as would be required to establish the 15 U.S.C. § 1115(b)(5) defense

2   if it applied to Sinhdarella's common law trademark infringement claims (which, again, it does

3   not).  Indeed, the very act of attempting to apply 15 U.S.C. § 1115(b)(5) – which refers to dates

4   on which trademark applications are filed, registered, and published by the United States Patent

5   and Trademark Office – to common law trademark rights illustrates why this defense does not

6   apply to Sinhdarella's common law trademark infringement claims.  Since Defendant has not

7   asserted any valid defense to Sinhdarella's common law trademark infringement claims, and in

8   light of the clear likelihood of confusion caused by Defendant's use of Sinhdarella's THE

9   BOILING CRAB trademark, Sinhdarella is certain to prevail on the merits of those claims.[5]

10              **2.      Defendant's Asserted 15 U.S.C. § 1115(b)(5) Defense Also Fails
                          Because Defendant Knew of and Copied Sinhdarella.**

11          Even with respect to the only one of Sinhdarella's trademark infringement claims to

12  which it applies (*i.e.*, Sinhdarella's claim for infringement of its registered mark), Defendant's

---

[5]  Although not expressly argued by Defendant, if Defendant's comments about Sinhdarella not
having a restaurant in San Jose are generously construed to suggest that Sinhdarella's
common law rights in the trademark THE BOILING CRAB did not extend to San Jose at the
time Defendant opened his restaurant, that suggestion is fundamentally incorrect under
governing law and the evidence in the record.  The geographic scope of common law
trademark rights extends at least as far as the mark's reputation with customers.  *Hanover
Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916).  Sinhdarella has provided substantial
evidence that its THE BOILING CRAB restaurants and trademark received substantial,
positive, and nationwide recognition and exposure from the media prior to the time
Defendant opened his restaurant, thereby establishing Sinhdarella's reputation and common
law trademark rights throughout the United States and specifically in San Jose, where
Defendant operates his restaurant, before Defendant opened his restaurant.  (Ngo Dec. at ¶
¶ 24-26 & 30-31, Ex. S, T, U, V & W.)  Further evidence that the reputation of Sinhdarella's
THE BOILING CRAB restaurants extended to San Jose includes the extensive evidence
submitted by Sinhdarella of consumers familiar with Sinhdarella's reputation and trademark
eating at Defendant's restaurant in San Jose and having been confused by Defendant's use of
Sinhdarella's THE BOILING CRAB trademark.  (See Cust. Decs.; Emp. Decs.)
Furthermore, the notion of geographic limits on trademark rights is further circumscribed in
situations like this, where customers are mobile.  *Fuddruckers*, 826 F.2d at 844 (geographic
limitations on trademark rights have "only limited applicability to services such as hotels or
restaurants," because their customers "are ambulatory and on the move back and forth across
the nation").  In any event, Defendant's restaurant falls squarely within Sinhdarella's zone of
natural expansion, and accordingly within the geographic scope of Sinhdarella's common
law trademark rights, as shown by Sinhdarella's uncontroverted evidence that it intended to
expand into the Bay Area well before Defendant opened his restaurant.  *See Brookfield*, 174
F.3d at 1047 ("senior" user has the right to enjoin "junior" users within the "senior" user's
natural zone of expansion).  Hence, Sinhdarella has clearly established prior common law
rights encompassing Defendant's San Jose restaurant.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

OC\933036.3

11

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - C 07-04353 WHA

1    asserted defense under 15 U.S.C. § 1115(b)(5) necessarily fails because Defendant did *not* adopt

2    and use Sinhdarella's THE BOILING CRAB trademark in good faith and without knowledge of

3    Sinhdarella's prior use of the mark THE BOILING CRAB, which began in California years

4    before Defendant opened his restaurant under the name "The Boiling Crab" in the very same

5    state.  In order to establish this defense, Defendant bears the burden of establishing that he

6    adopted the mark THE BOILING CRAB in good faith and without knowledge of Sinhdarella's

7    prior use of the mark.  *See* 15 U.S.C. § 1115(b)(5).  As explained in detail above, the precise

8    correspondence between Defendant's name, menu, and restaurant and Sinhdarella's name, menu,

9    and restaurant – which could not have been the product of chance (*see, e.g.,* Exhibit A attached

10   hereto), and cannot be explained by the Vietnam restaurant (whose menu lacks the precise

11   similarities found in both Defendant's menu and Sinhdarella's menu, *e.g.*, "Open 7 Days A

12   Week!") – unquestionably refutes Defendant's claim that he did not know of Sinhdarella's chain

13   of THE BOILING CRAB restaurants before this lawsuit was filed.[6]  Defendant's claim that he

14   "did a search on the United States Patent and Trademark Office [USPTO] website for the name

15   'Boiling Crab'" in June 2006 (Opp. at 2) and that he was not aware of Sinhdarella until this

16   action was filed (De Vries Supp. Dec., Ex. B at Response 3) also is not credible since it is

17   inconceivable that someone savvy enough to search the trademark database on the USPTO's

18   website would not also have conducted a Google search for "The Boiling Crab" at the same time,

19   which search plainly would have revealed the existence of Sinhdarella's THE BOILING CRAB

20   given at least Sinhdarella's presence in phone books and registration of theboilingcrab.com and

21   boilingcrab.com domain names prior to the time of Defendant's alleged search of the USPTO's

22   website.  (De Vries Supp. Dec., Exs. C & D.)[7]  Because Defendant's wholesale counterfeiting of

23   the name, menu, look-and-feel, and offerings of Sinhdarella's restaurants obviously was neither

24   ───────────────────

       [6]   Defendant's claim that he knew nothing of Sinhdarella until this lawsuit was filed also is not
25          credible given the four letters sent by Sinhdarella to Defendant before filing this lawsuit

26     [7]   Even if one were to believe that Defendant searched the USPTO website but did not search
            for "The Boiling Crab" on Google prior to opening his restaurant, any lack of knowledge of
27          Sinhdarella on the part of Defendant in that circumstance would not be objectively
            reasonable and so could not satisfy the requirements of 15 U.S.C. § 1115(b)(5) for that
28          reason as well.

1   "good faith" nor without knowledge of Sinhdarella's prior rights in the mark THE BOILING

2   CRAB, Defendant cannot meet his burden of establishing a 15 U.S.C. § 1115(b)(5) defense even

3   with respect to Sinhdarella's claim for infringement of its federally registered mark.[8]

4       **C.    Sinhdarella Possesses A Valid Trademark**

5           Without any explanation, argument, or supporting authorities, Defendant contends that

6   Sinhdarella's "'[The] Boiling Crab' trademark should be deemed invalid because it is merely

7   descriptive, and no secondary meaning has been established for it." (Opp. 8.) Defendant's

8   conclusory assertion is wholly insufficient to overcome the presumption of validity provided by

9   Sinhdarella's federal registration. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778 (9th Cir. 2002)

10  ("[T]he plaintiff in an infringement action with a registered mark is given the prima facie or

11  presumptive advantage on the issue of validity, thus shifting the burden of production to the

12  defendant to prove otherwise."). In any event, Sinhdarella's federal registration for the mark

13  THE BOILING CRAB evidences that the USPTO found the mark to be valid and constitutes

14  "prima facie evidence of the validity of the registered mark." 15 U.S.C. § 1115(a). Furthermore,

15  since Sinhdarella has established common law trademark rights by using its THE BOILING

16  CRAB trademark extensively in commerce in connection with its restaurants since at least as

17  early as 2004, (*see, e.g.*, Ngo Dec. at ¶¶ 3-13 & 16-26), Sinhdarella's common law trademark

18  rights enjoy the same presumption of validity. *Kendall-Jackson Winery v. E. & J. Gallo Winery*,

19  150 F.3d 1042, 1047 n. 7 (9th Cir. 1998). Moreover, Sinhdarella's THE BOILING CRAB

20  trademark is clearly at least suggestive and not descriptive, as necessarily determined by the

21  _____

22  [8]  Defendant's Opposition repeatedly accuses counsel for Sinhdarella of "threatening"
    Defendant and argues that Sinhdarella must be "estopped" from denying Defendant's
23  "continuous use" for purposes of his purported § 1115(b)(5) defense based on Defendant's
    decision to stop using Sinhdarella's THE BOILING CRAB mark for a few weeks towards
24  the beginning of this action. (Opp. at 3 & 8.) These accusations have no bearing on this
    issue, as Defendant's alleged defense under 15 U.S.C. § 1115(b)(5) fails because it does not
25  apply to Sinhdarella's common law trademark infringement claims and also because
    Defendant clearly knew about and copied Sinhdarella, *not* because of Defendant's decision to
26  stop willfully infringing Sinhdarella's rights for a few weeks towards the beginning of this
    action. Moreover, these accusations mischaracterize the discussion between counsel for
27  Sinhdarella and Defendant, in which counsel for Sinhdarella merely explained that
    Sinhdarella might seek a temporary restraining order, a seizure order if proper, and/or a
28  preliminary injunction if Defendant insisted on continuing his willful infringement.

1   USPTO in issuing the registration to Sinhdarella, and Defendant has failed entirely to put forth

2   any evidence or argument to the contrary.[9]

3           D.      **Defendant's Use of the Name "The Boiling Crawfish" Is Likewise**
                    **Confusingly Similar and Is Prohibited Under the Safe Distance Rule**

4           Defendant argues that, even if he is enjoined from using Sinhdarella's THE BOILING

5   CRAB trademark, he should not be enjoined from using the name "The Boiling Crawfish"

6   because, according to Defendant, "[h]ad Plaintiff wanted to preclude others from using this

7   name, it should have filed for protection of it."  (Opp. at 8.)  This argument fails to apprehend

8   that the scope of protection for a trademark extends to all confusingly *similar* marks, not just to

9   marks that are exactly the same as the trademark.  The mark "The Boiling Crawfish" is

10  confusingly similar to Sinhdarella's THE BOILING CRAB trademark because that mark is

11  extremely similar to Sinhdarella's trademark and is obviously intended to continue the actual

12  confusion already caused by Defendant's use of Sinhdarella's name.  The Court need not even

13  engage in this analysis, however, since Defendant is subject to the "Safe Distance Rule," which

14  prohibits Defendant from using a name intended to continue to profit from the goodwill

15  Defendant misappropriated from Sinhdarella.  *Chevron Chemical Co. v. Voluntary Purchasing*

16  *Groups, Inc.*, 659 F.2d 695 (5th Cir. 1981).  Defendant should be enjoined from using THE

17  BOILING CRAB, THE BOILING CRAWFISH, or any other name that includes the phrase "The

18  Boiling" and a name of an edible crustacean that begins with the letters "CRA."

19

20  [9]  Even if the mark were descriptive (which it is not), Sinhdarella has introduced more than
     sufficient evidence of secondary meaning: (i) Sinhdarella has used the mark continuously and
21   exclusively from 2004 through the time Defendant began using Sinhdarella's mark in 2006,
     (ii) Sinhdarella received widespread, national, positive recognition and exposure from the
22   media, including particularly widespread recognition among the Vietnamese-American
     community throughout the United States, prior to Defendant's use of Sinhdarella's THE
23   BOILING CRAB mark, (iii) Sinhdarella put forward evidence of actual confusion, and (iv)
     Defendant clearly copied Sinhdarella.  *Sierra v. Phoenix*, 739 F.2d 1415 (9th Cir. 1984)
24   (Plaintiff need only have a "fair chance of establishing secondary meaning" for a descriptive
     mark to support granting a preliminary injunction); *Committee for Idaho's High Desert v.*
25   *Yost*, 92 F.3d 814 (9th Cir. 1996) (length and exclusivity of use establishes secondary
     meaning); *Thompson v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (secondary meaning
26   established through advertising or unsolicited media coverage); *Adray v. Adry-Mart, Inc.*, 76
     F.3d 984, 987 (9th Cir. 1995) ("[T]he law clearly establishes that "actual confusion is an
27   indicium of secondary meaning.'"); *Yost*, 92 F.3d 814 (9th Cir. 1996) ("Proof of exact
     copying, without any opposing proof, can be sufficient to establish a secondary meaning.").

28

**III.    DEFENDANT CONCEDES THAT SINHDARELLA WILL BE IRREPARABLY HARMED IF A PRELIMINARY INJUNCTION IS NOT GRANTED**

Sinhdarella's founders and sole owners, Dada Ngo and Sinh Nguyen, hard working, middle-class entrepreneurs, have devoted their entire lives to making Sinhdarella and its THE BOILING CRAB restaurants a success.  Defendant's infringement threatens all that Dada and Sinh have worked so hard to establish, as evidenced by Sinhdarella's substantial evidence of actual confusion and harm to Sinhdarella's reputation caused by Defendant's infringement.  The harms to Sinhdarella caused by Defendant's infringement are, by their very nature, irreparable; moreover, the law presumes irreparable harm where, as here, a likelihood of success has been established, *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1050 (N.D. Cal. 2005).  Worse still, Defendant now concedes that, "even if Plaintiff were to win this case, [Defendant] has to pay his attorneys, *and Plaintiff will accordingly recover little.*"  (Opp. at 4 (emphasis added).)  This statement establishes with astonishing clarity the reality that, if Defendant is not preliminarily enjoined, Sinhdarella will continue to suffer substantial injury that Defendant swears under oath Sinhdarella will never be able to remedy by way of monetary damages from Defendant.  In contrast, Defendant cannot credibly claim he will suffer hardship if enjoined from continuing to infringe Sinhdarella's trademark, as Defendant already stopped using the name THE BOILING CRAB for several weeks towards the beginning of this action (Opp. at 8) and "the goodwill" Defendant claims to be afraid of losing was misappropriated from Sinhdarella in the first place.  Accordingly, Sinhdarella respectfully requests that the Court preliminary enjoin Defendant from continuing to infringe Sinhdarella's THE BOILING CRAB trademark during the pendency of this action in order to protect Sinhdarella from the material and irreparable harm it is sure to suffer if Defendant's ongoing infringement is not enjoined.

Dated:  January 24, 2008

LATHAM & WATKINS LLP

By _____
Michael W. De Vries, Esq.

Attorneys for Plaintiff
SINHDARELLA, INC.

# EXHIBIT A



**THE BOILING CRAB**
393 W CAPITOL AVE
SAN JOSE, CA 95133
(408)347-8344

**Menu**

| LOUISIANA CRAWFISH | $8.99/lb |
| Extra garlic butter $.50 | |
| OYSTERS (Raw)   6pieces | $9.99 |
| CRAB**L.A. Cajun style/Steam** | $9.99/lb |
| SHRIMP**L.A. Cajun style/Steam** | $7.99/lb |
| CLAM**Steam Only** | $7.99/lb |
| CORN | $.50/EA |
| SAUSAGE | $.50/EA |

**DRINK**

| SODA (Coke, 7 up Diet Coke) | $1.50/EA |
| BOTTLE WATER | $1.50/EA |
| DOMESTIC BEER | $3.50/EA |
| (Budweiser, Budlight, Barcadi..) | |
| IMPORTER BEER | $3.50/EA |
| (Heineken, Corona, Negro Modelo, Pacifico) | |

OPEN 7 DAYS A WEEK!
MON-FRI    3:00 PM-10:00 PM
SAT-SUN   12:00 PM-10:00 PM

---

**THE BOILING CRAB**

**Menu**

**OYSTERS (Raw)**
CRAWFISH   CRAB   SHRIMP

CORN..........
SAUSAGE

SODA (Coke, 7 up.
BOTTLE WATER...
DOMESTIC BEER
(Budweiser, Budligh
IMPORTER BEER...
(Heineken, Corona,

OPEN 7 DAYS A WEEK!
MON-FRI    3:00 PM-10:00 PM
SAT-SUN   12:00 PM-10:00 PM

---

**The Boiling Crab**

**MENU**

**OYSTERS (raw)**
CRAWFISH   CRAB   SHRIMP

Corn on the cob ...........
Sausage ...........

Soda - ONE SIZE ...........
Bottled Water ...........
Domestic Beer ...........
(Budweiser, Bud Li
Imported Beer ...........
(Heineken, Corona)

OPEN 7 days a week!
MON - FRI 3:00 PM - 10:00 PM
SAT - SUN 12:00 PM - 10:00 PM

---

**The Boiling Crab**
(714) 846-(CRAB) 2722
14341 Euclid St. #C-H4
Garden Grove, CA 92843

**MENU**

| BLUE CRAB (seasonal) | $6.99/lb |
| OYSTERS (raw) | $7.99/u or $9.99/DZ |
| DUNGENESS CRAB (seasonal) | $ Market Price |
| CRAWFISH (seasonal) | $ Market Price |
| ** Corn and Sausages added for 50c on item listed ** | |
| SHRIMP | $6.99/lb |

** Seasonings for Shrimp and Crawfish **
- CAJUN CRABS (DELICIOUS)
- LEMON PEPPER
- GARLIC BUTTER
THE WHOLE SHA-BANG! (all of the above)

**EXTRAS!**

| Corn on the cob | $.50/ea |
| Sausage | $1.99/4 pcs. or $2.99/10 pcs. |
| Garlic - w/ or w/o red... | $1.99/cup |
| Xtra Condiments | $.50/ea |
| (Garlic Butter, Ext/Mayo, Mayo, Or Sauce) | |

**Thirsty?**

| Soda - ONE SIZE (FREE refills) | $1.50 |
| Bottled Water | $1.75 |
| Domestic Beer | $2.00 |
| (Budweiser, Bud Light, Michelob) | |
| Imported Beer | $2.50 |
| (Heineken, Corona) | |

*** DINE IN A 15% gratuity will be added for parties of 4 or more ***

$20 minimum required on all credit card purchases.

OPEN 7 days a week!
MON - FRI 3:00 PM - 10:00 PM
SAT - SUN 12:00 PM - 10:00 PM

*** WARNING: This facility offers raw oysters from the Gulf of Mexico. These oysters may cause severe illness and even death in persons who have liver disease (for ex. alcoholic, cirrhosis), cancer or other chronic illness that weaken the immune system. If you eat raw oysters and become ill, you should seek immediate medical attention. If you are unsure if you are at risk, you should consult your physician. ***

---

OPEN 7 DAYS A WEEK!
MON-FRI    3:00 PM-10:00 PM
SAT-SUN   12:00 PM-10:00 PM

---

OPEN 7 days a week!
MON - FRI 3:00 PM - 10:00 PM
SAT - SUN 12:00 PM - 10:00 PM