United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SINHDARELLA, INC., a California Corporation,

    Plaintiff,

v.

KEVIN VU, an individual, d/b/a THE BOILING CRAB, CAFÉ BONITA, INC., a California Corporation; and DOES 2 through 10

    Defendants.

No. C 07-04353 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

In this trademark-infringement action, plaintiff moves for a preliminary injunction prohibiting defendants from operating any restaurant under the name "The Boiling Crab." Inasmuch as plaintiff has shown a likelihood of success on its trademark claim and irreparable injury, the injunction is **GRANTED**.

## STATEMENT

The essence of the case is that a mom-and-pop operation in Orange County has made a success of a restaurant called "The Boiling Crab." It would be only slightly too much to say that the fare served — Louisiana style crab and shellfish — has become a small craze among those of Vietnamese descent in California. The operation has expanded to a total of four stores using "The Boiling Crab" name. Defendant then opened a very similar restaurant in San Jose

under the very same name. He is also of Vietnamese descent. He opened his restaurant after the success of "The Boiling Crab." Although he claims to have copied the name and decor from a restaurant in Ho Chi Minh City, this claim seems tangled in a net of fishy contradictions. Truth is, defendant has been trying to muscle in on plaintiff's hard-won success and should be enjoined.

Plaintiff Sinhdarella, Inc., is a corporation owned by Dada Ngo and Sinh Nguyen (Ngo Decl. at ¶ 1). Since 2003, Sinhdarella has operated a chain of restaurants under the name "The Boiling Crab" (*id*. at ¶ 3). The restaurants offer Louisiana-style seafood including crab, oysters, shrimp, and crawfish (*id*. at ¶ 4). Currently, plaintiff has three such restaurants in Orange County and one restaurant in Houston with plans to open similar restaurants elsewhere (*id*. at ¶¶ 27–29, 32). Plaintiff registered "The Boiling Crab" mark with the USPTO on June 26, 2007 (De Vries Decl. Exh. A). Sinhdarella promotes the restaurants through use of the mark on T-shirts, hats, bibs, gift cards, and crab mallets. It maintains Internet websites at www.boilingcrab.com, www.theboilingcrab.com, and www.myspace.com/theboilingcrab (*id*. at ¶¶ 11–23). The Boiling Crab chain has received media recognition in *LA Weekly* and *Orange County Weekly* and is popular in the Vietnamese community in California (*id*. at ¶¶ 24–26). As such, plaintiff's restaurants were featured on a segment of a DVD and a television show both popular in the Vietnamese-American community (*id*. at ¶¶ 26–30). The Boiling Crab's menus are orange and sized at 4.25 x 11 inches (*id*. at Exh. D). The interior walls of the restaurants are decorated with fishing nets, signs, and red-crustaceans sculptures (*id*. at Exh. C). The prices are moderate and the fare is evidently good.

In September 2003, defendant Kevin Vu opened a Mexican restaurant named "Café Bonita" in San Jose, California (Vu. Decl. ¶ 7). In June 2006, Vu changed the name to the "The Boiling Crab" along with the restaurant's interior decor and menu, making it a seafood restaurant (*id*. at ¶¶ 12–15). Before changing the name, Vu searched the United States Patent and Trademark Office website for the mark "The Boiling Crab" and discovered that it was not yet registered (*id*. at ¶ 12). Vu printed his menus on orange paper sized 4.25 by 11 inches and decorated its interior by hanging his own fishing poles, crab nets, red-crustaceans sculptures,

2

and seafood signs along the walls (*id*. at ¶¶ 15–19). His café offers crab, oysters, shrimp, and crawfish (Nguyen Decl. Exh. D). Vu swears that all of this was done without reference to plaintiff's trademark and instead was inspired by a restaurant in Ho Chi Minh City also named "The Boiling Crab" (Vu Decl. at ¶ 18).

In October 2006, Sinhdarella sent the first of a series of cease-and-desist letters to defendants (*id*. at Exh. J). Defendants did not respond (*id*. at ¶ 5). Plaintiff commenced this action on August 23, 2007. In October 2007, at a time when he was not represented by counsel, Vu changed the café name from to "The Boiling Crawfish." Vu changed the name back to "The Boiling Crab" after retaining his current counsel (Vu Decl. ¶ 20). Recently, Vu has also opened two new similar restaurants in San Francisco and Sacramento under the name "The Boiling Crawfish." Plaintiff now seeks to preliminarily enjoin defendants from operating any restaurant under the name "The Boiling Crab" or any other confusingly similar name, including "The Boiling Crawfish." The matter has been fully briefed and oral argument heard on February 7, 2008.

**ANALYSIS**

**1.    LEGAL STANDARD.**

To obtain a preliminary injunction in a trademark-infringement case, a plaintiff must demonstrate either: (1) a combination of the likelihood of success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in plaintiff's favor. "The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *Abercrombie and Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007). In the Ninth Circuit, a district court must weigh eight non-exclusive factors when determining the likelihood of confusion between related goods: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) likelihood of expansion of the product lines; and (8) defendant's intent in selecting the mark. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d

3

341, 348–49 (9th Cir.1979), *abrogation in part on other grounds recognized in Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n. 19 (9th Cir. 2003)[1].

A trademark or service mark may be distinguished from a trade name in that the former is used to identify goods or services, while the latter is used to identify a business. While federal registration of a trademark is prima facie evidence that the registrant has the exclusive right to use the mark in connection with the goods specified in the registration, a trademark user may also establish common-law rights in a mark under the Lanham Act and state law. *See* 15 U.S.C. 1057(b); 15 U.S.C. 1125(a); and Cal. Bus. & Prof. Code §17200. The difference between a trademark and trade name, however, "is not often material, since the law affords protection against its appropriation in either view upon the same fundamental principles." *American Steel Foundries v. Robertson*, 269 U.S. 372, 380 (1926). As the Ninth Circuit has held, "[t]rade name infringement . . . is based on considerations similar to trademark infringement" and both "preclude one from using another's distinctive mark or name if it will cause a likelihood of confusion or deception as to the origin of the goods." *New West Enterprises, Inc. v. Gannett Co.*, 595 F.2d 1050, 1021 (9th Cir. 1982).

### 2. LIKELIHOOD OF SUCCESS ON THE MERITS

A strong probability of success on the merits has been proven for the following reasons.

#### A. Likelihood Of Confusion.

##### *(1) Strength of the Mark.*

An inherently distinctive mark, such as an arbitrary or fanciful mark, is entitled to a wider range of trademark protection (*e.g.*, "Apple" for personal computers). "A descriptive mark tells something about the product; it will be protected only when secondary meaning is shown" (*e.g.*, "Computerland" for a computer store). *Sleekcraft*, 599 F.2d at 349. In between descriptive marks and inherently distinctive marks are suggestive marks, which subtly suggest something about the product (*e.g.*, "Coppertone" for suntan oil). While a suggestive mark is not entitled to the same level of protection afforded to an inherently distinctive mark, it will be protected despite an absence of secondary meaning. *Ibid*.

---

[1] Unless indicated otherwise, internal citations are omitted from all cites.

4

Given plaintiff's involvement in the seafood-restaurant business, the mark "The Boiling Crab" is not inherently distinctive. The line between suggestive and descriptive, however, is harder to draw on our record. Factors the Ninth Circuit has highlighted in distinguishing between the two types of marks include the immediacy of the thought process to the particular product and whether others have used or desired to use the mark to describe the product. While a restaurant patron would probably be able to decipher the type of food associated with such a mark, it is by no means necessary to describe the goods provided. In addition, naming a seafood restaurant "The Boiling Crab" required some creativity and imagination, meaning significant steps were taken in order to go from the name of a seafood restaurant to the name in question. Accordingly, this order finds that "The Boiling Crab" is a suggestive mark. Thus, "only if the marks are quite similar, and the goods closely related, will infringement be found." *Sleekcraft*, 599 F.2d at 349.[2]

### *(2)   Proximity or Relatedness of the Goods.*

"[T]he more closely related the goods are, the more likely consumers will be confused by similar marks." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002). Here, Vu's restaurant offers the same exact goods and services as plaintiff's chain of restaurants. In terms of actual food, both offer crawfish, oysters (raw), crab, shrimp, corn, and sausage (Nguyen Decl. Exh. D and Ngo Decl. Exh. A). The menus of the restaurants have strikingly similar layouts and structure, as shown by this comparison:

---

[2] Defendants ignored altogether the issue in the briefing.

5



        Plaintiff's Menu                                            Vu's Menu

Both are on orange 4.25 by 11 inch paper and the food items are even laid out in the same order (*ibid*.). The only significant difference, besides the restaurant contact information given, is the font choice. Like plaintiff's chain of restaurants, Vu's restaurant is also decorated with fish nets, signs, and red-crustaceans sculptures. Such similarities cannot be ignored. In short, the goods and services sold are identical, so this factor weighs heavily in favor of a likelihood of confusion.

### *(3)  Similarity of the Marks.*

"[T]he more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Communications, Inc. v. West Coast Entertainment*

*Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). Vu's restaurant name is identical in terms of sound and meaning as plaintiff's registered mark. Despite these similarities, defendants argue that the two marks are "radically different" because on plaintiff's sign "The Boiling" is red and "Crab" is blue, whereas on Vu's sign "The" is blue and "Boiling Crab" is red (Opp. 5). The only other differences are the font choice and that plaintiff's sign has a blue crab at the end of the name (Ngo. Decl. Exh. B). This is not "radically different." The differences are only slight. The similarities predominate. Both use the same colors (red and blue). This invites confusion. That they use the same words guarantees it. This factor looms large for plaintiff.

### *(4)   Evidence of Actual Confusion.*

To demonstrate actual consumer confusion, plaintiff offers sworn declarations for six Vu customers who thought they were patronizing the real McCoy. The six customer declarations, however, all arise out of the same visit to Vu's restaurant. This reduces the strength of the evidence, but only somewhat. Inasmuch as all six were confused, the evidence is supportive of a finding of confusion.

Furthermore, employee declarations from fourteen employees at plaintiff's stores detail incidents where customers inquired as to the affiliation between Vu's restaurant and plaintiff's. Defendants challenge the employee declarations as hearsay. Although the Ninth Circuit has not addressed this issue, the majority of circuits have allowed such evidence to show actual customer confusion on the ground that it was not offered to show the truth of the matter asserted and was offered to show the state of mind of the customer declarant.[3]

This order finds the majority rule persuasive. The employee declarants have first-hand knowledge that the inquires were made. It is always possible that the customers were shining on the employee declarants but it is doubtful that so many would go to so much trouble to feign

---

[3] *See Fun-Damental Too, Ltd. v. Gemmy Industries Corp.*, 111 F.3d 993 1003–04 (2d Cir. 1997); *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1160 n. 10 (5th Cir. 1982); *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 133 (3d Cir. 2004); *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 804 (4th Cir. 2001); *Joardache Enters. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987). It appears as if only the Eighth Circuit has chosen to disallow such evidence. *See Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir.1996) (finding that evidence of misdirected mail and phone calls directed towards employees was inadmissible hearsay).

7

confusion. As such, the evidence may be and will be considered in determining actual consumer confusion.

The employee declarations detail over thirty instances where customers of plaintiff's chain of restaurants were confused as to the affiliation between Vu's restaurant and plaintiff's. Some even indicate that at least a few customers visited Vu's restaurant with the assumption that it was directly affiliated with plaintiff's (Appendix of Employee Decls. at Exh. E and Exh. I).

At the hearing on this motion, it developed that Vu has very recently expanded with two more stores, one in San Francisco and one in Sacramento. Both go by the name "The Boiling Crawfish." Plaintiff has provided customer reviews posted on popular Internet dining sites (*e.g.*, www.yelp.com) showing that several restaurant patrons who visited Vu's newly opened restaurants (with the name "The Boiling Crawfish") assumed they were affiliated with plaintiff's chain (Sec. Supp. Decl. De Vries Exh. J). This evidence shows actual confusion as such dining websites are essentially electronic dining guides for restaurant patrons. In short, considerable evidence demonstrates actual consumer confusion. This factor strongly weighs in favor of finding a likelihood of confusion.

### *(5)    Marketing Channels Used.*

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. As defendants do not argue that both parties use the same marketing channels to advertise their respective restaurants (*e.g.,* word of mouth, the Internet, and other media recognition), this factor weighs in favor of finding a likelihood of confusion.

### *(6)    Degree of Care Likely to be Exercised by the Purchaser.*

In evaluating the degree of care likely to be exercised by the consumer of the relevant good, district courts should employ the standard of a typical buyer with ordinary caution. "When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely." *Id*. at 353.

1    In their opposition brief, defendants do not address this factor. This order concludes that
2 patrons of either restaurant will not be expert enough to appreciate that the two stores are
3 wholly different regimes. The products involved are inexpensive and cannot support a cottage
4 industry of dining experts.

### *(7)  Likelihood of Expansion.*

6    The closest branch of plaintiff's chain of restaurants to Vu's restaurant is located in
7 Alhambra over 300 miles away from San Jose. "[A] strong likelihood that either party may
8 expand his business to compete with the other favors a finding of infringement." *Official*
9 *Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Plaintiff has plans to expand to
10 various locations across the United States including San Jose, Seattle, Richmond, and Dallas
11 (Ngo Decl. at ¶ 28). Plaintiff's plans are sketchy, however. Since plaintiff does already have
12 four restaurants in Texas and California as well as a discrete plan to open a new branch in
13 Dallas and since defendants have three stores in Northern California, a head-on collision of the
14 two chains is only a matter of time. This factor favors a finding of a likelihood of confusion.

### *(8)  Defendants' Intent in Selecting the Mark.*

16    Defendants contend that "[a]t no time prior to the naming of the [restaurant] was [Vu]
17 aware of restaurants of similar name owned or operated by [plaintiff]" (Vu Decl. ¶ 13). Vu
18 admits that he copied the idea behind "The Boiling Crab." But he allegedly copied from a
19 restaurant in Ho Chi Minh City also named "The Boiling Crab" during a December 2005 trip
20 (*id*. at ¶ 10). The Vietnamese "The Boiling Crab" is also strikingly similar to plaintiff's chain.
21 The store sign is almost identical to plaintiff's, as shown in this comparison:

9

   

Plaintiff's "The Boiling Crab"            "The Boiling Crab" in Ho Chi Minh City

Besides the names being identical, the Vietnamese restaurant also offers crab, shrimp, crawfish, corn, and sausage and the menus are similar in structure (*id*. at Exh. B). At first the Court was at sea over who copied whom in this crab triangle. The record now seems clear, however, that plaintiff's restaurants came first and that the other two are copy cats.

While Vu claims to have visited the Vietnamese "The Boiling Crab" in December 2005, the supplemental declaration of Attorney De Vries indicates that the Vietnamese "The Boiling Crab" was not even issued a business license by the Vietnamese government until September 2006, over nine months after Vu was allegedly "inspired" (Sec. Supp. Decl. De Vries Exh. B). For his part, Attorney Hays for the defense provided a supplemental declaration containing highly selective excerpts of a website said by Attorney Hays to show a trip taken by a third-party couple to Vietnam in 2001 where they visited the Vietnamese "The Boiling Crab" (Supp. Decl. Hays Exh. E). Even a cursory review of the entire website, however, reveals that the trip to Vietnam took place in 2007, *not* 2001 (Sec. Supp. Decl. De Vries Exh. I).

Significantly, there are also look-alikes between Vu's restaurant and plaintiff's not directly explained by the "The Boiling Crab" in Ho Chi Minh City. *First*, both Vu's menu and plaintiff's menu are orange and sized identically. *Second*, some food on Vu's menu that appears on plaintiff's menu does not appear on the menu for the Vietnamese "The Boiling Crab." *Third*, there is nothing on the record to suggest that the similarities in terms of interior decoration between the two restaurants was inspired by the Vietnamese restaurant. *Fourth*, both Vu's menu and plaintiff's have the phrase "Open 7 days a week!" including the exclamation point. In both, this is written at the bottom of the menu. *Fifth*, Vu's café and plaintiff's chain of restaurants have identical hours of operation as detailed on their respective menus ("MON–FRI 3:00 PM – 10:00 PM" and "SAT–SUN 12:00 PM – 10:00 PM").

In sum, the circumstances surrounding the crab triangle leave little doubt that plaintiff was first and the other two (including the Vietnamese store) are copy cats. This factor weighs in favor of finding a likelihood of confusion. Vu is in hot water.

### B. Possibility of Irreparable Injury.

If a likelihood of confusion is demonstrated, "irreparable injury to the plaintiff may be presumed." *First Franklin Financial Corp. v. Franklin First Financial, Ltd.*, 356 F. Supp. 2d 1048, 1050 (N.D. Cal. 2005). Plaintiff argues that irreparable injury in the forms of increased consumer confusion and harm to reputation will result if defendants are permitted to continue use of the trademark. In a hard-boiled litigation tactic, Vu has indicated that even if he eventually turns turtle, plaintiff will be unable to collect. As Vu stated:

> During yet another telephone conversation with [plaintiff's counsel] when I was not represented by counsel, at which time we were considering settlement, I told him that even before this lawsuit I had planned to live and retire in Vietnam. Last year I lived almost 6 months in Vietnam. I also told [plaintiff's counsel] that even though I have assets, I also have lots of debt, so that even if he wins the case I will have to pay my lawyer and [plaintiff] will not get much because there will not be much left (Vu Decl. ¶ 22).

If successful herein, plaintiff may thus not be able to recover for any monetary damages that may result from defendants' on-going infringement. This possibility in combination with the likelihood of confusion analyzed above qualifies as irreparable harm.

### C. Defendants' Good-Faith User Defense.

Under 15 U.S.C. 1115(b)(5), an alleged trademark infringer who began using a trademark before the mark was registered may be insulated from an infringement charge if:

> [T]he mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to [the registration of the mark].

Defendants contend they are entitled to the defense because Vu began using the mark without knowledge of plaintiff's chain of restaurants in June 2006, while plaintiff registered the mark in June 2007. Defendants' argument fails for two reasons.

*First*, as provided above, an overwhelming majority of evidence indicates Vu copied plaintiff's restaurants, precluding him from invoking Section 1115(b)(5) as a defense. Vu replies

11

1  that he conducted a search on the USPTO website that yielded no registered mark with the name
2  the "Boiling Crab." Websites are one thing. Success in the real market is another. Sailing under
3  false colors seems probable on this record.

4      *Second*, trademark rights are established through use in commerce and not through
5  registration. "To acquire ownership of a trademark it is not enough to have invented the mark
6  first or even to have registered it first; the party claiming ownership must have been the first to
7  actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Intern.*,
8  Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). By its very terms, Section 1115(b) only applies when
9  the trademark owner is attempting to use its registration date as the priority date to establish
10 ownership, meaning Section 1115(b) does not negate the possibility that the trademark owner
11 has already established common-law rights in the mark. Here, it is undisputed that plaintiff
12 opened its first restaurant in 2003 and continued opening new branches through 2004, two years
13 before defendants began using the mark.

14     A remaining question, which defendants have not argued, is whether the common-law
15 rights established in 2003 and 2004 extended from southern to northern California. By the time
16 defendants began using the mark, plaintiff had already established four restaurants in its chain.
17 While such expansion may not qualify for common-law protection across the nation, this order
18 will presume protection across California as restaurant patrons can regularly be expected to
19 travel across the state. Plaintiff's proffered evidence regarding consumer confusion supports this
20 conclusion.

21     **4.    THE SAFE-DISTANCE RULE.**

22     This order will bar defendants' use of "The Boiling Crab." A follow-on question is
23 whether similarly confusing names should also be barred. A trademark owner is entitled to
24 protection against identical marks and all those marks that are "confusingly similar" to the
25 protectable mark. *See Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir.
26 2003). Plaintiff would deep six defendants' use of not only "The Boiling Crab," but also "any
27 other name that includes the phrase 'The Boiling' and a name of an edible crustacean that begins
28 with the letters 'CRA'," including "The Boiling Crawfish" (Reply Br. 14).

1    The safe-distance rule is intended to proscribe infringers who have been caught "red
2 handed," as it were, from using a name intended to continue to profit from the goodwill
3 established by the trademark owner. As the Ninth Circuit held in *Plough, Inc. v. Kreis*
4 *Laboratories*, 314 F.2d 635, 639 (9th Cir. 1963):

> We also agree with [the trademark owner] that an infringer, once
> caught, should have his conduct carefully scrutinized in any future
> operations so as to determine his intent in going as far as he does.
> He must be required to keep a safe distance away from the margin
> line.

Given the boatload of evidence indicating Vu copied plaintiff and the likelihood that additional restaurant patrons will be confused, plaintiff's request is granted. With his recent opening of two more restaurants, Vu now has a total of three stores that trade on the goodwill established by plaintiff. As discussed above, these new restaurants, even operating under the name "The Boiling Crawfish," have already led to additional consumer confusion (Sec. Supp. Decl. De Vries Exh. J). "The Boiling Crab" restaurants have become popular among the Vietnamese-American community, and among all those enjoying such cuisine. To allow defendants to sidle sideways to "The Boiling Crawfish" would invite continued confusion and be a "craw deal" for patrons. An ocean of name choices are available. There is no reason why defendants cannot choose one that does not have the phrase "The Boiling" in it. Accordingly, defendants are prohibited from using the "The Boiling Crawfish" or any other mark that has "Boiling" in combination with a sea-water crustacean.

**5.    BOND.**

Under FRCP 65(c), an applicant for a preliminary injunction must post a bond "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained" as the "the [district court] deems proper." Within **SEVEN CALENDER DAYS**, plaintiff is **ORDERED** to post a bond in the amount of $20,000 to cover the potential injury to defendants if they are ultimately found to have been wrongfully accused.

13

**CONCLUSION**

Pending the outcome of a trial on the merits, defendants are **ENJOINED** from using the name "The Boiling Crab" or any other mark with "Boiling" in combination with a sea-water crustacean in connection with the operation of any restaurant or providing any restaurant services. The current marks in use by defendants, "The Boiling Crab" and "The Boiling Crawfish," should be immediately removed from all menus, phone books, state registrations, signs, and other media associated with marketing defendants' restaurants. Within **FOURTEEN CALENDER DAYS**, defendants shall file a certificate of compliance and within **SEVEN CALENDER DAYS** plaintiff shall post a bond in the amount of $20,000. Posting of the bond is a condition precedent to the effectiveness of the injunction.

**IT IS SO ORDERED.**

Dated: February 12, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE